Good morning, Your Honors. Kyle Gablai, appearing on behalf of Daniel Van Hoosen. This is a case about a mentally ill man, Daniel Van Hoosen, who pleaded guilty to a crime resulting in a mandatory life sentence on the advice of an attorney who he met for the first time that day, where the attorney told this suicidally depressed man that the benefit of the plea was that the dismissed charges would never be used against him. Not until after the first habeas petition was denied did Mr. Van Hoosen have any reason to believe that he received no benefit at all from the supposed plea deal. The heart of this case, I think, is at page 32 of the record. Permutations show up at various other parts, but 32, the two pieces come together, where Mr. Van Hoosen states, he was told by his counsel, Mr. Carter, that dismissing the charge of sexual assault with intent to commit rape would prevent the State from ever using or considering the alleged sex offense in any future proceedings. What Mr. Carter said, and I quote, induced me to accept the plea deal as I did not want to be in prison with a rape conviction on my file. That's the only consideration Mr. Van Hoosen received for this plea deal, where instead of pleading straight up to all the charges and having to serve less than a limited term of 10 years, he agreed to a mandatory life sentence. Subject only to the whims of the parole board. When Mr. Van Hoosen filed his original petition in 2002, he raised no claims questioning the adequacy of the advice that he received regarding the consequences. Did he have counsel? No, Your Honor, he did not. He proceeded pro se. This mentally ill man was forced to rely on his counsel. And the first petition was dismissed as untimely, correct? That is correct, Your Honor. He had many problems trying to get transcripts out of the superior court. And this mentally ill person who had been on anti-psychotic medication during the trial court proceedings and was not receiving his medication in prison. And that dismissal on statute of limitations grounds, is that a dismissal on the merits? It qualifies as a dismissal. And I think the case law does, puts this into a different posture. He didn't raise in that petition any claims regarding the consequences of his plea. And he couldn't have. He had no reason to believe he had any basis for such a claim until the prosecutor raised the sex related allegations. At Mr. Van Heusen's 2004 parole hearing. Until then, Mr. Van Heusen had not suffered any prejudice. Until that time, his attorney's representations as to the consequences of the plea still appeared to be correct. Since the day he entered his plea, no prosecutor had ever accused him of committing or attempted to use against him that there was any supposed sexual component to the fight involving his girlfriend. In other words, he couldn't discover the factual predicate for his claim until that point, right? That is absolutely correct, Your Honor. That's Part B.1, which is a basis for us to grant an SOS. It's not a basis to avoid having to apply for one, is it? Well, Your Honor, our theory is that this isn't a second or successive petition at all. I understand your theory. Right. Your theory I understand perfectly. Okay. The point is, what he's doing is he's attacking his underlying conviction a second time. Correct? That is correct. That's correct. And he's saying, I'm doing it because of facts that I couldn't have discovered until some later point. Correct? That is correct. That's precisely one of the grounds on which we would grant a second and successive were one applied for. It is not a basis under the statute for avoiding applying for one, is it? Your Honor, it is if it's not a second or successive petition. I understand. I understand. I understand your point. Your Honor, if it were an amended petition, for example. I'm not saying it's amended. I'm just saying it is indeed. Right. For example, if somebody hadn't been given discovery at the time of trial and had a petition and hadn't raised it, and later on it comes up that the discovery wasn't given, that's second and successive when they go back to attack their petition again. Right? We've said so? No, Your Honor. When you use the legal term of art, second or successive, the Attorney General may claim that this is second or successive, but the U.S. Supreme Court in Panetti was very clear that 2244 uses the phrase second or successive in a very – as a legal term of art. It's not to be interpreted literally. It's not to be given a strict application. And so these exceptions put a real constraint on the ability of Federal courts to allow people to raise claims that could not have been raised. This is not about a situation where the facts weren't discovered. The facts did not even exist. They did not even exist. Of course they existed. What existed was the fact that the government wasn't going to follow its plea agreement. Your Honor, as far as when the first – when the first petition was being litigated, through the time it was final, the government had done everything Mr. Van Hoosen understood that they had promised to do. They didn't do anything other than what he had anticipated. They complied with everything he was told by his attorney that they would do. And so he had no reason to complain. There was no breach. There was no basis for an ineffective assistance claim. 2244, if read literally, and if – if Petitioners are required to go through the gatekeeping – the exceptions, that can put an unreasonable burden on Petitioners' access to the court. And Suspension Clause requires that Petitioners have a meaningful opportunity to demonstrate that they are being held pursuant to an erroneous application of law. Roberts. So when you took a – when you stepped into the case or when you filed the brief here, why didn't you just – or separately, why didn't you just submit a request to the court, to this Court, an application to file? Your Honor, at that point, I guess the issues were framed. I could have, but I didn't think that this was a second or successive petition, so it didn't need to be. At that point, the – it would be questioned – there would be questions whether or not the petition would be timely. I can't – I can't say if this Court were to just grant permission. This Court could do so. This Court certainly, under Phelps v. Almeida, in fact, this Court could reopen the original case. There has been no judgment in the first petition, since it was only the denial of a – of a certificate of appealability. But – so this Court, as a panel, has plenary power over that. The Court, I think, could interpret the – or treat the briefs as a request for a petition, a request to file a second or successive petition. But our position here is that this is not a second or successive petition, any more than amended petition would be, any more than a petition after exhaustion would  And so that would just be imposing on the Court more burdens to pile through cases that really ought to go through the district court, and they ought to go through the district court in the first time. 2244's successive petition goes through – is supposed to be interpreted by the common law abuse of the writ doctrine, and the district court took an erroneous, literalist and formulaic approach when processing this case. You want to save a minute for rebuttal? I want to save a minute now, Your Honor. Okay. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Nikki Schaffer on behalf of Respondent Appellee. Your Honors, as implied by this Court's questions to Petitioner's counsel, Petitioner has always had and does continue to have an available remedy in this case. He simply needs to file a motion or application in this Court and request authorization to file a successive petition as required by Section 2244b3a. Because Petitioner failed to obtain this authorization prior to the filing of his successive petition, the district court's dismissal of that petition was correct and should be affirmed. If the Court has no further questions about this, I'll submit the matter on the brief. Let me just ask you one question. If we were to basically agree that he didn't comply with the gatekeeping function of coming here and asking for a petition. Yes. And we were to affirm on that basis, could he still come back and file an application? Yes, Your Honor. He's not foreclosed, is he? No, absolutely not, Your Honor. If the Court has no further questions, I'll submit the matter. No, I don't. Thank you. No, I don't. No. I wanted to ask counsel for the appellant. Did he make any effort to exhaust this claim in the State post-conviction proceedings? Yes, Your Honor, he did. And did he have counsel? No, Your Honor, he did not. So he was pro se all the time. That is correct, until I showed up, or I was appointed. Yes, he has been pro se continuously. I would just point out that the – if this Court were to grant – excuse me. If this Court were to affirm on the district court's order, I don't – I believe Mr. Van Heusen would be very adversely affected. He may be entitled to apply for permission, but the standards would require him to show that he was – that any – that he was actually innocent of the charges. And that is an extremely onerous burden, and I think it's virtually – virtually impossible to show, not necessarily in this case, but it would be extremely difficult in any case. And that is a burden that cannot be imposed on Petitioners. And the Supreme Court, I think, made clear in Pinetti that when a case is not right, it's not – it's not subject to the 2244 positions. I think a manifest miscarriage of justice occurred in this case, Your Honor. No federal court has ever looked in it, and that needs to happen. Okay. Thank you. Thank you, Your Honor. Van Heusen v. Kramer is submitted. Our next case for argument is Rawlings v. Estrew.
judges: Goodwin, Fernandez, Paez